*Scott, J.
The solution of the questions arising in this case depends upon the proper construction of the first stipulation or article of the agreement upon which suit was brought in the court below. That agreement purports to have been made between the defendants, of the first part, and other parties, of whom the plaintiff is the assignee, of the second part; and its first article or memorandum is as follows: “ The said parties of the first part hereby grant unto said parties of the second part, the exclusive right and privilege to run one or more of ‘Woodruff’s patent couch .and seat passenger cars,’ and any kind of sleeping-cars, bn and over the railroads of said parties of the first part, for the purpose of ac•commodating passengers traveling on said roads, which said cars may bo run each way, every night, over the line of said roads, between Cleveland and Cincinnati, in connection with the night passenger express through train between said cities.”
The plaintiff admits that during the term provided for by the contract, no sleeping cars other than his own were at any time used on that portion of the line of said roads which belongs to the Cleveland, Columbus and Cincinnati Railroad Company, and which -extends from Cleveland to Columbus. But he claims to recover, as upon a joint contract, against all the defendants, because sleopingcars other than his were permitted to be used and run over the southern portion of the line, owned by the two other defendants, and extending from Columbus to Cincinnati. The court below hold that such use of sleeping-cars other than the plaintiff's, upon .a portion of the line only, for the accommodation of passengers supon other lines of road, not passing to or through Cleveland, *560 -would not constitute a breach of the contract. Was this construction of the contract erroneous? Was it the intention of the parties to prevent each of the defendants from forming running connections with other roads, and providing such sleeping accommodations thereon as public convenience might require ? •
A train leaving Cincinnati for the east, on the Little Miami road, though drawn by a single locomotive, may consist of cars intended to be transferred to other roads at various points on its line. A portion of the ears may be ^intended for Marietta, to be [560 transferred to that road at Loveland; another portion may be filled with passengers for Wheeling or Pittsburg, each to be transferred at Columbus to the roads leading to those points; whilst another portion of the same train may be intended for transfer at Columbus to the Cleveland road, and properly constitute “ the night passenger express through train between Cincinnati and Cleveland,” described in the contract. If no sleeping-cars could be attached to any portion of the train intended for those other routes, and not to pass •over any part of the Cleveland road, it must be readily seen that the convenience of passengers, which was the avowed object of the •contract, would be seriously limited and curtailed ; and that, too, without a corresponding benefit to the plaintiff; for very few passengers bound for Wheeling or Pittsburg, and expecting to reach Columbus about midnight, would take a sleeping-car which they must leave at that unseasonable hour. A construction which would thus make the contract militate against the convenience and comfort of the traveling public should not be given to it, unless it can not be fairly construed otherwise.
By the terms of the agreement, the plaintiff’s sleeping-cars were to be run- over the railroads of the defendants, for the purpose of accommodating passengers traveling on said roads ” (without adding the words “ or either of them"); and they were to bo run each way, every night, over the line of said roads between Cleveland and Cin-cinnati.” And they were, further, to be run “in connection with the night passenger express through trains between said cities." This language contemplates the roads of the three defendants as contitutiag one continuous line, extending from Cleveland to Cincinnati; and the arrangements between the defendants had doubtless made it such, practically, as to through passengers, though neither road had .-any concern with travel not passing over its portion of the line. 'The transit over the whole line, from its length, we may reasonably *561, 562 suppose, would occupy the most, if not the whole, of one night;; and little, if any, patronage could be expected for the sleeping-cars, except from those who would be, substantially, through passengers.
The contract was, no doubt, intended to secure to the plaintiff’s 561] ^assignors the exclusive right to furnish sleeping-cars for the accommodation of this through travel. But it is by no means clear that it was intended to prohibit each of the defendants from furnishing similar accommodations, through other agencies, to passengers upon other lines of railroad, though connected by running-arrangements with this night express train of defendants, so as to-be carried thereby over some part of the line between Cleveland and Cincinnati.
An act of the legislature of New Jersey relative to certain canal and railroad transportation companies, prohibited, during the continuance of their charters, the construction of any other railroad or railroads in that state, without, the consent of said companies,, which should be intended or used for the transportation of passengers or merchandise between the cities of Now York and Philadelphia, or to compete in business with the railroad authorized by that act; and it was held by the court of chancery of that state-that the grant of this exclusive privilege operated only to protect the through business, from city to city, and not between intermediate places, and over any or every part of the route between the said-cities. 1 C. E. Green, 321. This case, referred to by counsel for-defendants, is, we think, somewhat similar to the present. It istruo, that was the case of a grant, which, as against the public, would bo construed strictly. But the same principle would require doubtful language in a contract, not to bo construed adversely to-the public interests or convenience.
No arrangements are shown to have been made among the defendants which gave the directory of the northern section of the-lino any control over such transportation as concerned the southern alone, or vice versa. If each of the defendants became bound, by this contract, in respect to passengers not transported over any part of its own section of the line, then in respect to such transportation each defendant became a surety or guarantor for its co-defendants. Its power to make such a contract of suretyship or-guaranty is, to say the least, questionable.
562] *By the' 24th section of the general railroad act of 1852,, each of the defendants was authorized to make running arrange *563 ments with the others in respect to traved or freight passing over the whole line, or from one section of it to the other. But a contract of guaranty by one of the defendants in respect to business on sections of the line other than its own, in which it had no interest and over which it could exercise no control, is quite a different affair. The plaintiff neither claimed in his petition, nor offered to prove upon the trial, that any sleeping-cars other than his own were permitted to be used, at any time during the continuance of the contract, upon any part of the northern section of the line; yet he claimed a joint judgment against all the defendants. His claim, as to the joint character of the contract, was sustained by the court below, and, we are inclined to think, properly sustained. And this feature of the contract is not to be lost sight of, in giving a reasonable construction to its stipulations. A construction which would render a defendant liable for breaches in which it had no agency, no interest, and no power of prevention, is not.to be favored. We can not reasonably presume, without language clearly to that effect, that such was the intention of the parties; but should rather presume that they intended to contract only in reference to through business, in which all had a common interest. A majority of the court think that the terms of the contract, considered with reference to the subject-matter, warrant this construction.

Judgment affirmed.

Day, C. J., and White, J., concurred.
Brinkerhoff and Welch, JJ., did not concur